May it please the court, Gail Ivins appearing on behalf of defendant appellant Johnny Magdaleno this morning. And I just want to say it's such a pleasure to be back in person. Nice to see you again after all these, was it two years plus? Two years, your honor, yes. It's been a long time. Nice to see you. I just want to start this morning with the government's 28-J letter, where they brought to the court's attention a recent decision, United States v. Wells, and rely on it for the proposition that the error that I complain of in this case was invited error. There's a couple of things about United States v. Wells which are actually helpful to Mr. Magdaleno as opposed to hurtful to his argument. One is that it's talking about, you know, when a condition is very specific, whether that means you then can't raise it. And it relies on, I think the case was U.S. v. Pollard, where there was an actual statement in the plea agreement that the defendant was waiving any Eighth Amendment claim to an excessive fine. And it was specific as to that specific constitutional claim, whereas the appellate waiver in this case is just the kind of general appellate waiver that this court considered in Bibler, which is just I'm waiving things. And indeed, we don't even really need to go very far because unlike cases where there's just sort of a blanket appellate waiver and then we look at it to see should we apply this Bibler analysis and look at the constitutional issue behind that, in this case the plea agreement itself actually carved out, with respect to sentencing, specific issues that could be appealed, including any argument of constitutional error. Well, let's just say arguendo that I agree with you about the invited error. I don't think either prong is likely satisfied, but I am troubled by the concept of the wolf child issue. I happen to be on that panel, as you may or may not know, so I have some knowledge of that personally. And there we had a situation where you had a sex offender who had some minor teenage daughters. And we concluded that that was a significant liberty interest to be deprived basically for the length of the control of seeing his own daughters. And we thought that you had to have a really, really, really good reason to do that. In this case, your client neither referred to any specific sibling nor did he refer to any cases where we have found that a sibling relationship is a significant liberty interest in the context of a wolf child. Isn't that correct? That is correct, Your Honor. And I spent some time trying to really parse this out. You'll notice I didn't file a reply brief, and I apologize. If I'd known I was going to argue the case in person, I would have taken care of that. The cases that the government has cited for the proposition that we're not looking at siblings, including the 1983 case, really talk about it in the context of do you have a close enough relationship that you should get money for it? And in this case, I guess I want to look at it as a substantive due process issue more than some type of liberty interest, or maybe it's both. If you look at the cases in terms of what is a constitutional right to association versus family versus what is the family, and we go back to even Griswold, where we talk about a privacy interest, we've had a lot of development in the law. Who is family and what is family? You're suggesting that basically we take Griswold versus Connecticut and come up with some kind of new constitutional right in connection with sentencing? Not new. I'm just saying the courts are not always clear about what the basis is, what constitutional basis there is when it recognizes a right. That still doesn't help us with regard to the difference between minor children and a wolf child and some other kind of relative, particularly siblings, and we're talking about a date well into the future, so we're talking about siblings that couldn't have lived together for a long time because your client's not in a position to live with any of his siblings for a long time. So why is it the wolf child principle should extend that far? I think that one of the things to look at here is just the de facto reality, which is he has no parents. They have deceased. He has no children, according to the pre-sentence report. Therefore, he doesn't have that. And this Court has recognized adult children in the 1983 context. So, but don't we have a problem with the factual basis because there's no indication that his siblings are gang members and we're supposed to proceed in the hypothesis that they're likely to be? So I think, and what I said in the brief and what I think I'm going to stick with is that there's an inference from the PSR, and obviously that is all there is, and I think the inference is strong, both in light of the fact of the information I cited in the brief in terms of the likelihood of gang membership kind of running in families and certainly after, I'm not going to say, 30-plus years of being a criminal defense attorney. I certainly have seen that borne out in my cases. Isn't that the explanation for why the restriction should go into effect? Do you want your client associating with gang members at that point? So you're on at paragraph 32 of the PSR. The probation officer goes through in detail sort of what his family situation is, and it includes his brother, Daniel, who's at Solano State Prison for a felony with a release date before that of Mr. Magdaleno, Carlos Sandoval, who's in state prison, Gabe Otero, who's at the Monterey County Jail, and Ben, who had been murdered. And there's no information about whether the basis for the murder or the basis for those incarcerations are gang activity, but I think there is that inference, and, Your Honor, Judge Clifton, I think that that's right, that the court probably could impose a condition that says you can't see your family, your siblings, but they have to engage in a heightened procedure before they do that. Why? If the limitation extends only to gang members, it sounds like the heightened procedure has already been accomplished.  admittedly, which is why we're here on playing air, whether the only family he has at this point, and certainly the only family he's going to have in about the 24 to 30 years he'll be released, is that. That's his family. And so in terms of defining family, I think the court should consider the de facto reality that it's not that he has other family, and he's going to be released from prison in, I tried to do all the math, let's say something less than 30 years. He'll be younger than I am now when he's released, if he's not held in state custody on some kind of indefinite detention. But his state sentence is supposed to end in 2047, according to the California Department of Corrections now. It said 59 in the lower court proceedings, but according to the CDCR today, it's earlier. And when he's released, he has no job skills other than what he develops in prison. He has no money. That's pretty clear. And he has no wife or children to support him. So his de facto reality is what he has. Let's take all of that as being true. The bottom line, at least as I look at it, you're asking us to extend the principle of Wolfchild, but your client advanced no detailed information. I've had this wonderful relationship with X, who we just did everything together. We grew up together. He's my family. There's nothing. It's all conjecture. And as we've all said, there just isn't any law to back this up. Perhaps it could come at some point, but I'm really struggling with how we take the facts of this case and extend this significant liberty interest concept, or Griswold, if you want, to get there. Can you help me on that? I mean, today, almost all the cases, including Johnson, which I cited, exclude family from the reach of this, and in this case it didn't, which is just a mistake. And I won't be practicing in 30 years to come back and try to fix this. Well, we hope you will be able to retire in grace before that time. Thank you. Thank you, Your Honor. Do you want to save the rest of your time for rebuttal? I do, thank you. Very well. All right, let's hear from the State. Actually, yes. Good morning. Good morning, Your Honors. May I remove my mask? Please. Thank you. A lot more comfortable, isn't it? Yes, it is. May it please the Court, my name is Claudia Quiroz, and I represent the United States in this appeal. Your Honors, this Court should affirm the District Court's position of the special condition of supervised release restricting Magdaleno from associating with gang members without a familial exception because this challenge fails, as we noted in our briefs, under both the invited error doctrine and plain error review. Counsel, I've read, of course, your brief and your argument about invited error, but as I read it, Mr. Magdaleno, he didn't propose the gang condition. He just agreed to it. And that doesn't satisfy the required prong of the invited error doctrine, does it? Your Honor, you're correct that he did not propose it, but he entered into a knowing agreement. He was represented by counsel. The District Court asked him numerous times whether he understood. That's only one prong, is it not, of the invited error doctrine? My understanding is that for invited error, basically, he has to propose it. In other words, like a jury instruction. Here, Your Honor, here's this jury instruction. I really want it. Love it. It's great. And then complain about it. That's not what we have here, is it? What we have, Your Honor, is a contractual agreement. Plea agreements are any authority, case authority, that supports the expansion of invited error to an agreement entered into by a party in response to a proposal, which is pretty obviously from the government. I mean, the government prepares a plea agreement, proposes that they may negotiate. But I haven't seen any authority that supports expansion of invited error to that. Do you have any to cite to us? No, specifically, Your Honor. But he agreed to recommend it. Well, that's a long way from inviting the error. He accepted the government's invitation. He didn't offer that up to the Court. It seems to me if we adopted that perception of invited error, lots of our cases applying plain error would go out the door. A lot of instruction cases, for example, involve instructions that the parties wind up pushing up to the bench together. We don't view that as invited error. I'm really mystified as to why the government's taking the position that invited error should extend to something where basically he's not objecting to a term proposed by the government. So, Your Honor, again, the government agrees that it wasn't actually a proposal per se. The way that the government is construing it in terms of the waiver and that he, as a But you're not arguing appeal waiver in the classic sense, probably because of Ms. Wyden's notes, it carves out constitutional and she's constructed what appears to be a constitutionally based argument. So rather than argue the usual appellate waiver, which is what I was expecting to find when I read the brief, I didn't get that. I got this invited error hybrid. And I've got to say, I just don't see it. And you don't have any case authority that suggests we should expand invited error to this. So, Your Honor, even if you don't agree with the invited error proposition, the government's position on the merits, even if the court finds that the invited error is not met, the under plain error review, Magdaleno's challenge clearly fails for a number of reasons. And I'd like to address the points that my colleague has noted. Can I just ask you one more question about invited error? Yes, Your Honor. If we accept your position, wouldn't that apply to every plea agreement with an appellate waiver? So everything in that plea agreement would be invited error and there would be no review? Not necessarily, Your Honor. And, you know, plea agreements are different. There's nuances in the language. But isn't your argument he agreed to it? He entered into the plea agreement. He's got an appellate waiver. That's good enough. That would apply to an awful lot of plea agreements. Possibly, Your Honor, it might. But in this record, the fact that Magdaleno had adequate representation, that the court took detailed steps to make sure that Magdaleno understood the agreement, understood the waiver. He didn't object to it. He had an opportunity. The court told him that you are going to have an opportunity to object to the PSR. He stated that he understood that. He presented no objection. And he entered into this agreement and agreed to recommend it. And, Your Honor, I'd like to note one thing before I proceed. Just one brief correction to our papers. In our brief, we noted that Mr. Magdaleno has six siblings. That's on page 34 of our brief. And in reviewing the materials in preparation for the oral argument, I noticed a typographical error. He actually has seven siblings. And that's PSR paragraph 137. So I just wanted to note that correction for the court. Your Honors, if I may address some of the issues raised by my colleague. Counsel argues that there's a strong inference in this case that Magdaleno's siblings are gang members. And in support of that proposition, my colleague cites only two things. One, a 2009 report prepared by the New Zealand Ministry of Education and a 2020 Eastern District case, Lopez v. Covello. Just briefly on the 2009 report, the proposition for which my colleague cites this report is actually the opposite. So the report presents findings of research for educational students in New Zealand. And it actually quotes a number of students where they talk about how they have, even though they have had family relationships with gang members, with parents, siblings, they have taken steps to dissociate themselves from those family members. So it's actually the opposite for which. Counsel, let me ask you this, just to save you some time. If we were to agree that any inference is not enough under any circumstances, is there anything in the record that you're aware of where the appellant has laid out a, if you will, an intimate family relationship with any of these siblings, however many there might be, that could potentially rise to the wolf child significant liberty interest level? Absolutely not, Your Honor. And that's exactly the point and the point we make in our brief. That, Magdalena, points to nothing, no evidence showing what type of relationship he has with his siblings. He doesn't, he puts nothing in the record to show how, first, the gang restriction would be different if it included the family relationship. He does not name a single family member with whom he cannot associate because of the condition. Would the government, and this is a hypothetical, if he had, let's say, Joe and Harry are two brothers, and he were to put in evidence saying, you know, we grew up together, these are my best friends, here's some evidence of all this, and so on, in your judgment would the significant liberty interest fit in that situation? It still would not, Your Honor. And why? Because Mr. Magdalena does not show how this would make a difference in 30 years. So counsel noted that he can only, he won't have any money, he won't have a job, he will only be able to live with his siblings. There's nothing in the record to support that. First of all, we don't know where his siblings are going to be in 30 years. He could live alone. One of the siblings, I think, Ms. Ivan said, was dead, so he won't be a factor. That's correct. So 30 years from now, a long time. That's correct, Your Honor. And we know nothing about his siblings, correct? There's nothing in the record showing that he has any type of relationship with his siblings. He could live with a significant other. There are many other options when he's released. So Your Honor is correct. And I see my time is running short. I would just like to note that the court is absolutely correct that the Wolfchild principle should not extend as far as counsel is suggesting. Counsel seems to suggest that because Magdaleno has no parents and has no children, according to the record, the only thing he has is siblings. And so that should qualify as the intimate family relationship that this court describes in Wolfchild. And there's just no law to support that extension. So you agree that there is no case law that you're aware of in any jurisdiction that would support the concept that a sibling, per se, fits into a significant liberty interest concept? In this context, Your Honor, in the supervised release violation context, and especially when the district court, it is clear from the record that the district court framed this condition in the context of Mr. Magdaleno's history as a violent gang member and focusing on the reality that he needs to be rehabilitated and that the community needs to be protected and protection himself as well from gang members. So I see my time is almost up unless the court has any other questions. Can I ask whether either of my colleagues has additional questions for the government? Thank you very much. Very much. So, Ms. Ivins, you've got just a little bit of time. What can you tell us that would be helpful? You can take the mask off if you want to. I keep forgetting to do that before I get up. That's all right. You can keep it on if you want to. No, no, I really don't. Okay, what I have, which is very limited, I will be the first to tell you, but I think it's important. This court, in the case that decided that 1983 actions do not encompass the sibling relationship, discussed the Tenth Circuit case of United States v. Trujillo, where that court did decide that sibling relationships are included in that close. Included in a 1980, the ambit of a 1983 action? Yes. Well, that's very different, isn't it? Is it very? I mean, it either is very different or it isn't because they do go back and forth, and it is what the government cited in support. And if it's enough, if a sibling relationship is enough so you can recover damages for it, isn't it enough so that there's a liberty interest? With respect, I think that's quite different. I mean, money is one thing. Intimate relationship where you rely on one another for emotional and other support. I mean, even the Beatles told us that money can't buy you love. Isn't that right? That is true, Your Honor. That's probably still true. It can certainly buy you support and a roof over your head and someone to cheer you on as you go to your AA meeting or go to your gang intervention meeting. Family can be very important. And I think my sister, who is without children, would be very sad. Would you want the support to attend a gang intervention meeting from somebody who was at that time a member of a gang, which is, in fact, what the restriction pertains to? Yes. I mean, if he knows they're a member of a gang, I mean, that is how it's phrased. But possibly they should both go. I mean, I've got to tell you, gangs don't think of people as dropouts until they're dead. So I, you know, as a criminal defense attorney, I just don't think it's like an on-off switch. Whether you're a gang member or not a gang member is not— But why doesn't that explain the reason for the restriction? Because if you—just because the gang wants to keep hold of your client doesn't mean the court should be in a position to foster that, should it? And to go back to the point I made previously, Your Honor, because that's an excellent point, we're asking for heightened procedures. We're not necessarily asking that this condition not be imposed. We're asking for heightened procedures before it's imposed. Thank you. Very well. Thank you. Any other questions by my colleagues? Thanks to both counsel for the argument. The case of United States v. Magdaleno is submitted.
judges: CLIFTON, SMITH, Reiss